No. **91-139**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

JOE TEMPLE,

Plaintiff and Appellant,

-vs-

CHEVRON U.S.A. INC., a corporation,
CHEVRON INDUSTRIES, INC., a corporation and
MANVILLE SALES CORPORATION,
a Delaware corporation,

Defendants and Respondents.



FILED

JUL 30 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gene R. Jarussi: Jarussi & Bishop, Billings,
Montana.

For Respondents:

Jeanne M. Bender and Kyle A. Gray: Holland & Hart,
Billings, Montana.

Submitted: April 30, 1992

Decided: July 30, 1992

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellant Joe Temple appeals the order and judgment of the Thirteenth Judicial District Court, Stillwater County, dismissing his complaint styled as an Equitable Bill of Discovery. We affirm.

We restate the issues on appeal as follows:

1. Is a cause of action known as an equitable bill of discovery cognizable under Montana law?

2. Did the District Court err in dismissing appellant's complaint for an equitable bill of discovery pursuant to Rule 12(b)(6), M.R.Civ.P.?

Joe Temple was employed by Chevron Resources Company as an equipment operator and was working in the Stillwater Mine on April 4, 1990, when an underground train backed into and ran over him. He sustained physical injuries as a result of the incident and is being paid workers' compensation disability benefits by his employer.

On June 21, 1990, Mr. Temple filed a complaint for an Equitable Bill of Discovery in the Thirteenth Judicial District Court, Stillwater County, Montana: an amended complaint was filed on August 15, 1990. The named defendants, respondents herein, were Chevron U.S.A., Inc. (Chevron), Chevron Industries, Inc. (Industries) and Manville Sales Corporation (Manville). Chevron and Manville are partners in the Stillwater Mining Company which owns the Stillwater Mine; Chevron is the managing partner. Chevron engaged Industries to perform the actual management functions at the mine. Those functions are carried out by Chevron Resources

2

Company (Resources), Mr. Temple's employer, which is a division or subsidiary of Industries.

Mr. Temple's complaint described the nature of the accident and alleged that, as a result of that accident, Mr. Temple may have a cause of action against one or more of the defendants. He claimed that there was relevant evidence within defendants' control, to which he did not have access, which would identify the causes of the accident and the entities against which he may have a claim. These documents, the complaint alleges, include investigation reports, records describing the legal relationships between defendants and information about the underground train. Mr. Temple further alleged that the information he sought by the equitable bill of discovery was necessary in order for him to thoroughly investigate the circumstances surrounding his accident, as mandated by Rule 11, M.R.Civ.P.

In his prayer for relief, Mr. Temple sought copies of any investigative reports prepared by defendants as a result of his accident and records which would describe the relationship of the various defendants with regard to the operation of the Stillwater Mine. He also sought any information in defendants' possession which would identify the manufacturer, distributor, and owners of the cars and engine of the train that ran over him.

Defendants objected to the discovery sought and moved to dismiss the complaint because it failed to state a cause of action cognizable under Montana law. Defendants asserted that the discovery sought was not authorized by Montana's Rules of Civil Procedure.

3

The District Court granted defendants' motion to dismiss for failure to state a claim for which relief could be granted. The court rejected Mr. Temple's argument that Rule 11 prevented him from filing a complaint against any of the defendants without the requested discovery. The District Court concluded that, "while there may be some set of circumstances where an action that might be denominated an equitable bill of discovery would be proper, the pleadings here do not constitute such a bill, nor do they conform to the Rules of Civil Procedure." Mr. Temple appealed.

1. **Is** a cause of action known as an equitable bill of discovery cognizable under Montana law?

Appellant argues that, while he may have a claim based on his injuries of April 4, **1990,** he does not know the theory upon which the claim would be based or the party against which any claim should be asserted because all of the information necessary to make those determinations is in the exclusive possession of the corporate respondents. He further alleges that if he does file a claim against respondents without knowing all of the underlying facts, he risks sanction under Rule 11 for filing a claim which is not well grounded in fact. It is appellant's position that Montana's courts should exercise their equitable jurisdiction under Article VII, § 4 of the Montana Constitution to recognize an independent action known as an equitable bill of discovery such as has been recognized in a few other jurisdictions.

Respondents assert that the equitable bill of discovery is precluded by the Montana Rules of Civil Procedure. They rely specifically on Rule 8(a) which requires that a complaint contain a statement showing entitlement to relief, and Rule 34(c) which

4

permits independent actions for discovery but, according to the respondents, contemplates an action in existence to which an independent action for discovery under the Rule must be related. Respondents also argue that Mr. Temple could conduct his discovery by simply suing them for damages or by proceeding under Rule 27(a), M.R.Civ.P., which they assert allows depositions to be taken for perpetuation prior to the commencement of an action. Finally, it is respondents' position that an independent action for discovery is impermissible under this Court's decisions.

The equitable bill of discovery was the primary means of discovery prior to the adoption of modern rules of civil procedure. Courts which have addressed the issue of whether modern rules of civil procedure totally supersede the equitable bill of discovery are divided.

Some courts have held that the equitable bill has been rendered obsolete by current systems of pleading and practice. See Guertin v. Guertin (Ill. App. Ct. 1990), 561 N.E.2d 1339; Rothery Storage and Van Co. v. Atlas Van Lines (N.D. Ill. 1985), 609 F.Supp. 554; News and Observer Publishing Co. v. North Carolina (N.C. 1984), 322 S.E.2d 133. The conclusion in these cases is that the need for the equitable bill of discovery was eliminated by adoption of modern rules of civil procedure which include liberal discovery rules.

Other courts have recognized that there may be limited circumstances and situations, not covered by the modern rules, in which equity may require the availability of the equitable bill of discovery. As stated by the Supreme Judicial Court of Maine:

Although modern discovery rules and liberal pleading requirements <u>virtually eliminate the need</u> to resort to an independent action in the form of an equitable bill of discovery, they do not totally displace the traditional equitable jurisdiction of the . . . [courts] to issue appropriate orders for independent discovery <u>when effective discovery cannot otherwise be obtained and the ends of justice are served</u>. *See, e.g., Reilly Tar Corp. v. Burlington N. R.R.*, 589 F.Supp. 275, 282 (D.Minn. 1984); *Folsom* v. *Western Elec.* Co., 85 F.R.D. 651, 653 (W.D.Okla. 1980); *Arcell v. Ashland Chemical Co.*, 152 N.J.Super. 471, 378 A.2d 53, 70-71 (1977); **see** *also Wimes v. Eaton Corp.*, 573 F.Supp. 331, 335-37 (E.D.Wisc. 1983); Pomeroy, § 207(b), at 345 (equity court has inherent power to permit inspection in appropriate circumstances).

Shorey v. Lincoln Pulp & Paper Co., Inc. (Me. 1986), 511 A.2d 1076, 1078, (emphasis added; footnote omitted). We agree with the reasoning of the Maine court.

Respondents' arguments that the Montana Rules of Civil Procedure preclude an equitable bill of discovery altogether are not persuasive. First, nothing in the Rules specifically prohibits such an action. Rules 3 and 8(a) require the filing of a complaint showing entitlement to relief and demand for judgment. Those requirements can be met by filing a complaint for an equitable bill of discovery which meets the requirements discussed herein.

Respondents' reliance on Rule 34 is similarly misplaced. It is true that Rule 34 applies only to parties in existing litigation and Rule 34(c), while not precluding an independent action against a non-party, does not by itself authorize a court to order discovery from a non-party. On the other hand, nothing in Rule 34(c) prohibits recognition of an equitable bill of discovery in circumstances where the discovery is necessary, is not otherwise obtainable, and serves the interest of justice. We conclude that the Montana Rules of Civil Procedure do not preclude the equitable

6

bill of discovery.

Respondents also assert that the equitable bill of discovery is impermissible under this Court's decisions in Japp v. District Court of Eighth Judicial Dist. (1981), 191 Mont. 319, 623 P.2d 1389, and State, ex rel. Pitcher v. District Court (1943), 114 Mont. 128, 133 P.2d 350. This argument is without merit.

In Japp, the district court allowed discovery not provided for by the Rules, namely a private interview. We granted a writ of supervisory control and vacated the district court's allowance of such an interview:

> We conclude therefore, that a District Court, in allowing and enforcing discovery in litigation before it, must relate the discovery to one of the methods provided in Rule 26(a), M.R.Civ.P. Any attempt to enforce a method of discovery not provided by the Montana Rules of Civil Procedure is outside the power of the District Court.

Japp, 191 Mont. at 324, 623 P.2d at 1392 (emphasis added). As is clear from our stated conclusion, the District Court had litigation before it and, in that context, went outside the Rules to allow discovery not specifically provided for in the Rules. This significant factual difference between Japp and the instant case makes our conclusion in Japp inapposite here.

Nor does our decision in Pitcher preclude an equitable bill of discovery. In Pitcher, a district court order allowed a party to conduct a discovery deposition and examination of books and records prior to commencing litigation, pursuant to a rule of procedure similar to Rule 27(a), M.R.Civ.P., which authorized perpetuation of testimony in anticipation of litigation. The applicant who sought to conduct the discovery deposition alleged that he would be the

plaintiff in a lawsuit and that the person from whom he sought discovery would be the defendant. He alleged that the deponent owed him money for work, labor, and services rendered, and specified that there was an amount in excess of $1,000 due.

We concluded in <u>Pitcher</u> that:

> The petitioner has ample remedy by proper procedure. He says that the witness is indebted to him on an account for labor and services in a twenty-four year period of employment on which there is owing to him upwards of $1,000. He does not need to examine the witness nor the books to determine the exact amount. He can sue for **$1,000** and after action commenced he may then have inspection of the books before trial. Upon the trial a reference can be ordered if necessary in the examination of the account for the establishment of facts in connection therewith. In so proceeding the petitioner would obtain the evidence he is entitled to have, and in an orderly and lawful manner, and the adverse party would not be put at a disadvantage, but would be in a position to maintain his rights as the law provides.

<u>Pitcher</u>, **114** Mont. at **140, 133** P.2d at **353.** We held that the statute at issue was not intended to be a discovery statute and that the district court's order would authorize the examination of books and records in a manner not authorized by law.

Neither the facts in <u>Pitcher</u> nor the law on which that decision was based is similar to the case before us. If anything, <u>Pitcher</u> is authority for the proposition that appellant cannot take the depositions he seeks to take in this case pursuant to Rule 27(a), M.R.Civ.P.

We have reviewed the authorities provided to us by appellant and respondents. We conclude that, while modern rules of pleading and practice virtually eliminate the need for an equitable bill of discovery, the better reasoned approach is to recognize and allow an equitable bill of discovery under certain limited circumstances.

The foregoing analysis and conclusion brings us to the question of the circumstances under which a complaint for an equitable bill of discovery will be recognized in Montana courts. The question includes appropriate party defendants in an equitable bill, information which may be sought, and procedural requirements.

The courts which recognize the equitable bill are not in agreement as to proper party defendants in such an action. Florida cases generally apply the equitable principle that a person with no interest in the action, or who is merely a witness, cannot be made a party to an equitable bill of discovery. First Nat. Bank of Miami v. Dade-Broward Co. (Fla. 1936), 171 So. 510, 511. See also Poling v. Petroleum Carrier Corporation (Fla. 1967), 194 So.2d 925 (dismissing from an equitable bill an employer which could not be a defendant in the contemplated lawsuit because of workers' compensation exclusivity). Other courts have recognized the equitable bill against persons or entities which cannot be defendants in the prospective legal action. Shorev, 511 A.2d 1076; Lubrin v. Hess Oil Virgin Islands Corp. (D. Virgin Islands 1986), 109 F.R.D. 403. See also Investors Mortg. Ins. Co. v. Dykema (D. Or. 1984), 598 F.Supp. 666 (allowing equitable bill against individuals not parties to an existing lawsuit). We find guidance in this regard and in regard to other appropriate limitations on the equitable bill of discovery in Shorev and Lubrin.

In Shorev, the injured worker filed his equitable bill solely against his employer, an entity which could not be a party in the worker's potential action against an equipment manufacturer because of the exclusivity of the Maine Workers' Compensation Act. In

9

addition, the worker sought only to inspect the machine which caused his injuries; he had requested permission to do so, but his employer refused the request. The Maine court noted that the worker could not proceed under Rule 34, which allows for entry on land to inspect, precisely because the employer could never be a party to an action against the equipment manufacturer: nor could he proceed under Rule 34(c) which does not authorize an independent action for discovery. Thus, on the basis of the noted facts and as discussed above, that court concluded that an equitable bill was available because the discovery sought could not otherwise be obtained.

Similarly, in Lubrin an injured worker sought from his employer the name of the manufacturer or supplier of the equipment involved in his work place accident, an on-site visit to help him identify such entity and to inspect the site of the accident, and the deposition of one of his employer's representatives to determine the suppliers and manufacturers of the involved equipment. These requests were denied and the worker filed an equitable action against his employer to obtain the on-site visit and to conduct a Rule 30(b)(6) deposition for the noted purpose. It appeared to the United States District Court that the worker would be unable to identify the manufacturer or supplier of the equipment without the assistance of his employer, a non-party in the potential lawsuit. As a result, the court recognized the equitable action with respect to the on-site visit as the kind of independent action contemplated by Rule 34(c), F.R.Civ.P.

The defendants in the equitable discovery actions in both

Shore and Lubrin were the employers, the very entities which could not become defendants in the potential actions. In addition, the discovery sought was limited, in essence, to assistance in determining the identity of potential defendants. Finally, requests for the limited discovery sought had been made and denied. We are persuaded that these circumstances provide appropriate parameters for the availability of an equitable bill of discovery in Montana.

We note, in this regard, our concern with regard to constitutional problems which could arise if an equitable bill of discovery could be brought against potential defendants. While we have determined that Pitcher does not prohibit the equitable bill, it does suggest the constitutional difficulties inherent in forcing a potential defendant to produce records in advance of the commencement of litigation. We stated:

> The proceeding launched by the petitioner is what the courts have often spoken of as a fishing expedition, in this instance having for its purpose the discovery of facts and information as the basis for litigation. The relator is under compulsion to come with all his books and records, expose everything he has that tells the story of his business for twenty-five years, submit it all to the scrutiny of the man who is planning a lawsuit against him. Clearly this would be a violation of the relator's right to security against unlawful search and seizure of his papers and effects, and cannot be allowed.

Pitcher, 114 Mont. at 139, 133 P.2d at 353, (emphasis added).

We hold, therefore, that an equitable bill of discovery is cognizable under Montana law, but that it is available only against a person or entity which cannot be a defendant in subsequent litigation. Further, the equitable bill is available for the names and addresses of potential defendants and for on-site visits to

11

inspect specific items which may have caused a documented injury. Finally, a plaintiff in an equitable bill action must show that the discovery requested cannot be obtained otherwise and has been requested of, and denied by, the person or entity which, for whatever reason, cannot be a defendant in subsequent litigation.

> 2. Did the District Court err in dismissing appellant's complaint for an equitable bill of discovery pursuant to Rule 12(b)(6), M.R.Civ.P.?

It is clear from our holding as to the limited availability of an equitable bill of discovery that Mr. Temple's complaint does not meet the requirements for such an equitable bill. In particular, all of the information sought by Mr. Temple is sought from the very entities which are potential defendants in subsequent litigation. Of equal or greater importance, the information sought is, to a large extent, much broader than we have concluded is appropriate in an equitable bill. Finally, the showing of unavailability otherwise and request and denial are absent. It remains appropriate to address Mr. Temple's Rule 11 arguments as they relate to his complaint.

Mr. Temple argues that he cannot file a complaint against Chevron, Industries and Manville, and thereafter conduct discovery, because of Rule 11's requirement of certification that the complaint is grounded in fact: this is so, he asserts, because the information he needs to make such a certification is within the exclusive control of these very entities. While this argument has some surface appeal, it does not bear up under scrutiny.

First, Rule 11 states only that a signature constitutes certification that "to the best of the signer's knowledge,

12

<u>information and belief</u> formed <u>after reasonable inquiry</u> it is well grounded in fact . . . and that it is not interposed for any improper purpose. . . ." All the Rule requires is that a party make reasonable inquiry and then certify based on knowledge, information and belief. Here, it appears from responses by Mr. Temple's counsel during oral argument that little or no inquiry was made prior to filing the equitable action asserting that all of the information needed is within the exclusive control of the named defendants. Most notably, he did not obtain reports concerning the accident from the state or federal safety regulatory body having jurisdiction over the accident. Such reports may include a wealth of information with regard to such things of interest to Mr. Temple as safety responsibility at the mine and the train which ran over him.

Next, as recognized by the language of the Rule itself, Rule 11 does not require a guarantee or certification that every detailed fact has been thoroughly investigated and proved to be correct. Neither the Rule nor our cases supports Mr. Temple's premise that he would face sanctions under the Rule were he to file a "knowledge, information and belief" complaint "after reasonable inquiry." Rule 11 sanctions have been imposed sparingly in Montana and only where a party has failed to make reasonable inquiry into the facts and law and, thus, has failed to meet the objective reasonableness standard. See Bee Broadcasting Assoc. v. Reier (1989), *236* Mont. 275, 769 P.2d 709. Furthermore, while we have affirmed sanctions in a case involving improper joinder of a party, we did so where "[a]bsolutely no legitimate purpose was served" in

13

joining the party and the joinder was "ill-advised, frivolous, malicious and oppressive." D'Agostino v. Swanson (1990), 240 Mont. 435, 784 P.2d 919. If reasonable inquiry produced a reasonable belief that a parent company or partners in a venture retained overall safety responsibility for a work site, it is inconceivable that a joinder of such parties would result in sanctions.

Indeed, it is common practice to join parent and partner companies in a complaint where a party is not certain at the outset which entity has ultimate responsibility for a particular incident but believes, after reasonable inquiry, that one or more of the entities is responsible. Discovery after the complaint is filed often produces the specific answer, after which nonresponsible parties can be dismissed. Nothing in the case before us suggests, much less mandates, a different procedure here. In the alternative, fictitious "Doe" pleading also is available to save meritorious causes of action where, despite reasonable diligence, the actual identity of culpable parties remains unknown or uncertain. Nurenberger v. Hercules-Werke v. Virostek (Nev. 1991), 822 P.2d 1100. These time-honored alternatives negate appellant's Rule 11 argument and provide procedures which enable a plaintiff to commence an action; correspondingly, these alternatives permit a defendant to know what it must defend against and to rely on the protections afforded by the Montana Rules of Civil Procedure.

We hold that the District Court did not err in dismissing appellant's complaint for an equitable bill of discovery pursuant to Rule 12(b)(6), M.R.Civ.P. Nothing herein should be interpreted to prohibit the filing by Mr. Temple of an equitable bill in

accordance with the requirements of this opinion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

The unfortunate employee in this case is seriously injured and caught in a maze of corporate unaccountability. Chevron, under one corporate name, owned the mining operation where he worked. Chevron, under another corporate name, managed the mining site. Chevron, under a third corporate name, employed him. He does not know how he was injured, he does not know why he was injured, and he does not know which form of Chevron was responsible for making the place of his injury a safe place to work.

For years, courts in this state and all over the country have been trying to discourage attorneys from filing frivolous complaints for damages without a factual basis. We have even adopted Rule **11** so that we can punish those who do. Now this Court has recognized a cause of action known as an equitable bill of discovery so that information beyond a person's grasp can be made available when necessary. Any reasonable mind would conclude that the circumstances in this case are the exact circumstances €or which an equitable bill of discovery is appropriate. However, that logic has apparently escaped the majority.

The majority opinion is also unfaithful to the authorities upon which it is based. It is correct that equitable bills of discovery were allowed in both *Shorey v. Lincoln Pulp & Paper Co., Inc.* (Me. **1986**), 511 A.2d **1076,** and *Lubrin v. Hess Oil Virgin Islands Cop.* (D.V.I. **1986**), **109** F.R.D. **403.** However, it is not correct that those

**15**

results were premised on the fact that the defendants in those cases were employers who could not be sued for damages. Nor is it correct that the results in those cases were premised on the fact that only limited discovery was sought.

The rationale upon which the *Lubrin* decision was based applies directly to the circumstances in this case. In permitting the requested discovery, the Federal District Court in that case explained the plaintiff's dilemma as follows:

> It appears that, Lubrin will be unable to determine the manufacturer or supplier of the BTX cargo manifold and tank without HOVIC's assistance. Since that assistance is not forthcoming, Lubrin is placed in a precarious position. Stated concisely, Lubrin must force a non-party in an anticipated tort suit to supply him with information he needs for determining whether a third-party may be liable for his injuries. Lubrin brought this action for the specific purpose of conducting this type of discovery. For the following reasons we find this tactic proper and will order an expedited discovery schedule.

*Lubrin*, 109 F.R.D. at 404.

In explaining its decision, the Federal District Court stated:

> We note that a number of District Courts have reached the same conclusion and have recognized that rule 34(c), although not authorizing a court to order discovery of a nonparty, does not prohibit an independent action to obtain discovery. *Reilly Tar Cop. v. Burlington N.R Co.*, 589 F.Supp. 275, 278-79 (D.Minn. 1984) (case dismissed for lack of jurisdiction, however, the court was of the opinion that ancillary jurisdiction may properly be exercised in a discovery action seeking inspection of a nonparty's land if the facts of a particular case so warrant); *Wimes v. Eaton Cop.*, 573 F.Supp. 331 (E.D.Wis. 1983); *Huynhv. Werke*, 90 F.R.D. 447, 450 (S.D.Ohio 1981); *Home Ins. Co. v. First Nat. Bank*, 89 F.R.D. 485, (N.D.Ga. 1980). Most of these courts have characterized this independent action as similar to the antiquated instrument called an equitable bill of

16

discovery. *Reilly Tar Corp.*, at 278; *Wimes*, at 333-34; *Home Ins. Co.*, at 488-89. This mechanism was used as the primary means of discovery prior to the advent of the Federal Rules of Civil Procedure in 1938. *Wimes*, 573 F.Supp. at 333-34. Although Lubrin did not style his complaint as an equitable bill for discovery, he does request equitable injunctive relief seeking the equivalent result. We therefore find our result in accordance with the few decisions which exist on this subject.

*Lubrin,* 109 F.R.D. at 405.

The defendant in *Lubrin* happened to be the plaintiff's employer and could not be sued for damages. However, nothing in that opinion can be interpreted to suggest that the court's conclusion was based upon the employer's immunity from suit. The result was based upon the plaintiff's inability to obtain the necessary information without filing an equitable bill of discovery.

Everything said about the *Lubrin* decision is equally true for the *Shorey* decision. Nowhere in its decision did the Maine court suggest that its result was premised on the employer's immunity from suit. The Maine court very clearly stated that equitable bills of discovery are appropriate "when effective discovery cannot otherwise be obtained and the ends of justice are served." *Shorey,* 511 A.2d at 1078.

Furthermore, the majority completely ignores numerous other decisions where equitable bills of discovery have been recognized in situations where the defendant was someone other than an employer. In *Sunbeam Television v. Columbia Broadcasting System* (S.D.Fla. 1988), 694 F. Supp. 889, the court held that an equitable bill of

discovery would be permitted under Florida law when brought by the owner of a television station against a national network. Interestingly, in that case:

> The Defendants assert that Florida law only allows a party to maintain a bill of discovery against a putative defendant and, therefore, because Plaintiff has asserted no potential claims against Defendants Perris and GEPMC, they are improperly joined.

*Sunbeam*, 694 F. Supp at 892.

The district court in that case responded that:

> This is a gross overstatement of Florida law and internally inconsistent with the purpose of the bill--to ascertain, as a matter of equity who an injured party may sue and under what theory.

*Sunbeam*, 694 F. Supp at 892.

In *Wolfe v. Massachusetts Port Authority* (Mass. 1974), 319 N.E.2d 423, the Massachusetts Supreme Judicial Court allowed a motorist to file an equitable bill of discovery against the port authority to discover toll receipts gathered at a toll bridge.

In *Investors Mortgage Insurance Co. v. Dykema* (1984), 598 F. Supp. 666, the United States District Court for the District of Oregon allowed an equitable bill of discovery brought by a mortgage insurance company which sought entry upon two mortgagors' property for the purpose of performing an appraisal. Interestingly, that case is also the only reported case where the party from whom discovery was sought objected on privacy grounds similar to those about which the majority expresses concern. However, in that case, the district court disposed of the privacy argument with the following conclusion:

18

> Investors contends that the appraisals it seeks are vital to the outcome of the main action in this matter and cannot be obtained by any other means. The Dykemas and the Nielsens do not contest these allegations, but request that the court deny the relief sought on the basis that it would violate their right to privacy. While the constitution protects individuals from unwarranted intrusion into their homes, that protection is not without its limits and needs to be balanced with Investors' right of access to the courts. The harm to these defendants in allowing an appraisal is minimal. The right of Investors to a full-blown hearing with all the facts is an essential part of full access to the courts and outweighs the Dykemas' and Nielsens' claims of privacy.

*Investors,* 598 F. Supp at 669.

The great majority of jurisdictions which have considered whether to allow an equitable bill of discovery have permitted it. Of those jurisdictions where an equitable bill of discovery is allowed, this Court has placed greater limitations on its use than any other jurisdiction I have found.

The majority's reasons for those limitations have no practical basis in the real world.

In addition to limiting equitable bills of discovery to parties who cannot be later made a defendant, the majority has placed the following additional limitations on this cause of action:

1. The discovery is limited to names and addresses of potential defendants and on-site visits; and

2. The pleading commencing the action must show that prior request has been made.

Just how do you ask the defendant in an equitable bill of discovery for the names and addresses of potential defendants?

**19**

Surely any justice who thinks that a practical response would come from that kind of request has never participated in litigation where discovery was sought. This is a particularly impractical suggestion when the employer from whom discovery will be sought is simply one form of several interrelated corporations, one or more of whom may have been the party responsible for the plaintiff's injuries. Does the majority really think that one of these interrelated corporations is going to identify one of its sister corporations in response to a request for the identity of potential defendants in a lawsuit for damages?

Why should equitable bills of discovery be limited to on-site visits? Simply because that is the type of discovery that was sought in two of the cases which are relied on as authority for allowing an equitable bill of discovery? This limitation makes no sense. Other cases cited in this dissent allowed discovery of other types of information. The purpose of the bill of discovery is to enable a plaintiff to obtain relevant information which would otherwise be beyond his control. There is no rational basis for distinguishing one type of relevant information from another type of relevant information. Why is it more appropriate to allow him to visit an accident site than to see a copy of an accident investigation report which may explain the cause for his accident? This distinction makes no sense.

What practical purpose does it serve to require the plaintiff to allege that before filing his equitable bill of discovery he made a request that the defendant produce the information which is

**20**

sought?  The equitable bill of discovery is itself a request for that information.  It includes a prayer for relief.  The prayer for relief in this case sought copies of any investigative reports prepared by the defendants as a result of the plaintiff's accident: records which would describe the relationship of the various defendants with regard to the operation of the Stillwater Mine: and any information in the defendants' possession which would identify the manufacturer, distributor, and owners of the cars and engine which formedthe train that ran over the plaintiff.  This complaint was served on all of the defendants.  They could have brought a complete and abrupt end to this litigation by simply providing the information which was requested.  If they had provided the information, it would have been a complete defense to the plaintiff's bill of discovery.  To require the plaintiff to make a request for the material before this written request for the material exalts form over substance and imposes a meaningless, practical hurdle which provides absolutely no benefit to anyone.

The majority states in its opinion that, "(h]ere, it appears from responses by Mr. Temple's counsel during oral argument that little or no inquiry was made prior to filing the equitable action . . . ."

I disagree with that characterization of remarks made during oral argument.  Furthermore, there is absolutely nothing in this record to indicate what efforts the plaintiff did or did not make prior to filing this complaint.  What we do know, is that in his complaint plaintiff alleged that the information which is necessary

21

to his investigation is in the exclusive control of the defendants. For purposes of ruling on a motion made pursuant to Rule 12(b)(6), M.R.Civ.P., we assume those facts alleged in the complaint are true. *Mogan v. City of Harlem* (1987), 227 Mont. 435, 437, 739 P.2d 491, 492. If those facts are true, then no amount of inquiry short of that which was sought by the plaintiff's complaint would discover those facts.

It is also incredible that the majority would suggest that its decision is justified based on the protection of constitutional rights. As pointed out previously, the only court to consider this issue in a constitutional context has found that an equitable bill of discovery does not violate a constitutional right to privacy. However, the majority's constitutional rationale is particularly suspect.

The majority opinion concludes that it might offend the constitution for the plaintiff to file a petition for discovery and ask Chevron (in any of its several forms) for information about his accident. However, it also concludes that if he amended that petition and called it a complaint for damages by making some phony allegation that he believed the defendants were responsible for his damages, he could discover the very same information. What would be the constitutionally significant difference under those two circumstances? In both cases, the defendant is represented by counsel. In both cases, discovery is subject to the same rules of civil procedure. And in both cases, the defendant is afforded protection from the District Court where the discovery sought is

22

unlikely to lead to the development of relevant information. I congratulate the majority on their sudden constitutional convictions. I question their elevation of Chevron's right to be free from minor inconvenience to a place of greater constitutional importance than the plaintiff's right of access to this State's courts. Furthermore, if the majority was going to take this step it should have come up with better precedent than some loose language in a 49-year-old case that is admittedly not on point.

The foregoing comments relate to the injustice of this decision as it pertains to the plaintiff. However, the majority opinion is an equally significant disservice to responsible practitioners in this State. Rule 11, M.R.Civ.P., clearly provides that when an attorney signs a complaint he certifies that based upon a reasonable inquiry he has a belief that the complaint is well-grounded in fact. If it turns out that after signing such a certification, he has no information which would justify such a belief, both he and the person he represents are subject to substantial sanctions. If we are going to restore respect for our adversary system and the legal profession, we need to strictly enforce Rule 11, and not suggest that it is really meaningless.

In this case, the plaintiff has alleged in his complaint and his affidavit that he does not know how his accident happened, he does not know which of several interrelated corporations were responsible for providing him a safe place to work, and he does not know who was responsible for manufacturing and operating the train which ran over him. Furthermore, he has alleged that the

defendants are in the exclusive control of that information. If, as we must assume, the defendants are in exclusive control of that information, and if the plaintiff is precluded from obtaining that information because of this decision, then how can he allege, without the benefit of this discovery, that after reasonable inquiry he knows that one of the defendants was responsible for his injuries. In language that defies reason, the majority suggests that there is a new form of complaint known as a "knowledge, information, and belief" complaint filed "after reasonable inquiry." If there is no factual basis known to the plaintiff for filing a complaint, what is a "knowledge, information, and belief" complaint? This incredible word game engaged in by the majority totally eliminates Rule 11 as any meaningful deterrent to frivolous complaints. This opinion invites abuse of the judicial process and punishes the responsible actions taken by the plaintiff's attorneys in this case. The majority suggests that **"fictitious** 'Doe' pleading also is available to save meritorious causes of action where, despite reasonable diligence, the actual identity of culpable parties remains unknown or uncertain." That suggestion overlooks the fact that the plaintiff in this case does not know whether there is a meritorious cause of action, nor whether there are any culpable parties. All that the plaintiff does know is that one of several related forms of the Chevron companies, or their partner, has exclusive control of the information which would enable him to determine whether he has a cause of action. A

fictitious "Doe" pleading has absolutely no relevancy to the circumstances in this case.

The majority opinion uses terms like **"knowledge,** information, and belief" complaint, and fictitious "Doe" pleading in totally inappropriate ways. The former will now surely show up in future cases as if it actually meant something. Those cases will probably result when these same corporate defendants successfully seek the imposition of sanctions on the first plaintiff who relies on this new kind of pleading. The latter was never intended for circumstances such as exist in this case, and will surely cause some unsuspecting attorney's misfortune if he or she relies on the misguided advice of the majority opinion.

By encouraging people in the plaintiff's position to make uninformed allegations of wrongdoing just so that they can gather information that ought to be given to them as a matter of common decency, this Court has forfeited the moral authority to sanction anyone in this state for violations of Rule 11. That is indeed an unfortunate situation which will poorly serve both the legal profession and the judiciary in the future.

For these reasons, I dissent from the opinion of the majority.

_____
                    Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent of Justice Trieweiler.

_____
                    Justice

25

Justice R. C. McDonough concurs and dissents.

I concur that an equitable bill of discovery is cognizable under Montana law. Such bill should be properly pleaded and include an allegation that request for the necessary information has been made from the parties named as defendants in the complaint and that information has not been provided pursuant to such request. However, in this instance I would not dismiss due to this insufficiency because this appeal is one of first impression and it is obvious that respondents resisted discovery.

I respectfully dissent from the majority as to the other restrictions imposed in its opinion. Courts of equity are not bound by cast-iron rules. The governing rules of equity are flexible and adopt themselves to the exigencies of the particular case. See Dutton, Mollenberg v. Rocky Mtn. Phosphates (1968), 151 Mont. **54,** 438 P.2d 674. A myriad of fact situations can arise where the imposition of such a restriction or restrictions would be inequitable. Complaint for discovery should be permitted to be reasonably brought and proved. However, once the need for discovery is established, the scope and methods of limited discovery should be conducted under the direction of the court.

If evidence of the need is submitted to the satisfaction of the court, then with the court's permission upon proper showings, a party may make discovery which would be the least cumbersome, intrusive and expensive to the parties. This would satisfy the constitutional requirements of the right of access to the courts contained in Article 11, Section 16, the requirements and the

26

prohibition against unreasonable searches and seizures under Article 11, Section 11, and the right of privacy under Article 11, Section 10 of the Montana Constitution of 1972.

_R. C. McDonough_
Justice
